## Trustees of the Warner Home for Little Wanderers v. The Warner Home for Little Wanderers et al

[149 A2d 363]

January Term, 1959

Present: Cleary, C. J., Adams, Hulburd, Holden and Shangraw, JJ.

Opinion Filed March 4, 1959.

*H. H. Powers* for The Warner Home.

*John G. Kissane, Pro Se.*

*John Mulvey* for the plaintiffs.

**Hulburd, J.** This is a proceeding brought in chancery for a declaratory judgment. The plaintiff-trustees seek to have determined their rights and those of the defendant-corporation to a bequest under the will of Mabel S. Barkyoumb. The case comes here following a hearing before the chancellor which resulted in a decree ordering the executor to turn over the bequest to the plaintiff-trustees. The defendant-corporation has briefed exceptions to the chancellor's failure to make certain findings and exceptions to the decree itself.

The factual side of this case is largely the history of a charitable enterprise. There is little dispute about it and no ill-will. Its story, as disclosed by the findings of fact, runs as follows: In 1882 the defendant-corporation came into being. (See No. 162 of the Acts of 1882). By legislative enactment, certain persons who previously had been members of an unincorporated association called "The Warner Home

for Little Wanderers," became a body corporate and politic for the charitable purpose of rescuing and supporting destitute children. To this end, the new corporation was endowed with the power, among other things, to "receive and hold all kinds of property and the same dispose of at pleasure;" it was invested (Sec. 4) "with all the rights, property, effects, credits and liabilities" of the unincorporated association.

Now, prior to the foregoing incorporating enactment, in this same year of 1882, Chauncey Warner executed an indenture. Mr. Warner might be spoken of as the god-father of this charitable enterprise. In the indenture, he recited that "certain ladies in said town (St. Albans) have associated themselves together under an association called 'The Warner Home for Little Wanderers' with the view of securing an incorporation of the said association at the next session of the Legislature of the State of Vermont" and that these associated ladies had named certain persons to act as trustees to hold and manage "all funds, money, and property that may be donated to or secured by such association" and that these named trustees were willing to act in the capacity specified. The indenture then proceeded as a deed in trust. There was conveyed by it to the named trustees certain described real estate and other property and funds which it was said "will amount in value to the sum of Twenty-five Thousand Dollars ($25000.00)." The habendum then stated that the property thus conveyed was "For the sole benefit of 'The Warner Home for Little Wanderers' existing as a charitable association * * * * and when the said association shall become a corporation by a special act of the Legislature * * * * then all of the aforesaid property held in trust, and all other property and monies that may hereafter be acquired, as above mentioned, shall enure to the sole benefit of the Corporation so created, and the said Trustees and their successors shall thereafter hold and manage all of said property for the sole use and benefit of the said Corporation and the use and trust for the existing association shall thereupon terminate and cease." It was further provided that "no part of the fund or principal shall be at any time applied to the purposes of this trust but that the whole of the rents, issues, profits and increase of the said fund and property

shall be paid by said Trustees to the officers of the association as they may need and require the same—until the use and the trust shifts, and thereafter to the Officers of the Corporation to be created as above mentioned." There followed provisions as to filling vacancies on the board of trustees, requirements as to bond, and power as to investments which need not be stated at length here. The indenture concluded with an acceptance by the trustees of the trust with a covenant "to discharge the same pursuant to the foregoing provisions." The indenture was executed by both Warner and the named trustees.

The present trustees are the successors of those originally designated in the trust deed and the defendant-corporation is the same corporation which was anticipated in it. Down through the years the defendant-corporation has operated as contemplated and has received and accepted the benefits of the trust in compliance with its terms. Its corporate powers and authority have not been abridged, limited, modified or amended in any way and are still in full force and effect. The defendant-corporation is, and for several years has been, a beneficiary under trusts other than the Warner fund. These additional trusts are administered separately by other trustees than the plaintiffs and through them the defendant-corporation has directly received the income from such additional trusts. For several years, too, the defendant-corporation has received many testamentary and *inter vivos* bequests and gifts of money, stocks, bonds, and other securities of large and small amounts. These the defendant-corporation has received directly into its treasury and treated as its own property. Except for a testamentary gift from one, Dr. Grace Sherwood, no protest of any kind was ever registered by any of the plaintiff-trustees, refuting the right or capacity of the defendant-corporation to receive bequests and gifts directly into its treasury; moreover, when the Sherwood legacy was paid directly to the defendant-corporation, only a "mild protest" was heard from one of the trustees.

With the situation being as we have stated it, along came the legacy in the Barkyoumb will, with a residue totalling over One Hundred Thousand Dollars. This precipitated the con-

troversy before us. When Mabel S. Barkyoumb drew her will, she knew of the Warner Trust administered by the plaintiff-trustees. She also knew of the defendant-corporation. With this knowledge, she named the defendant-corporation as one of two residuary legatees in her will. The chancellor has specifically found that she used the correct corporate name of the defendant and that the plaintiff-trustees are not named, designated or mentioned, either as a group or by individual names, in any part of the will. Nevertheless the plaintiff-trustees claim that the legacy thus willed should come to them by virtue of the trust indenture and that it is for them to invest, manage and control the funds from this new bequest for the benefit of the defendant-corporation. On the other hand the defendant-corporation claims title to the legacy to the exclusion of the plaintiff-trustees and would deny them the right to manage and control all or any part of it.

With the facts standing as we have related them, the chancellor decreed in favor of the trustees and directed the executor of the Barkyoumb Estate to turn over to them the amount of the legacy under the will for their management and control.

It is with the defendant-corporation's exceptions to this decree that we are mainly concerned. In justification of the decree it is the plaintiffs' position "that under the terms of the Trust Indenture, accepted by Chauncey Warner and the Trustees, and assented to by the association, and later the defendant-corporation by virtue of Section 4 of the Charter and the continuous acceptance of the Benefits of the trust throughout the years and the interrelationship between the Trustees and the defendant, they, the Trustees, are entitled to manage and control the funds in their trust capacity."

The chancellor largely adopted the plaintiffs' theory and it is for us to say whether his decree can be supported on the findings he has made.

█ The first inquiry that suggests itself is the simple one of whether the findings show that the legacy in question was left in trust. Every potential donor, like Mabel S. Barkyoumb, must be regarded as free to give or bequeath his property

in the manner he prefers. In the circumstances here he could give it to the defendant-corporation directly, or he could give it in trust. If he gave it in trust he could name his own trustees or he could adopt those set up under the original indenture. In short, it would rest with each individual donor to give as he chose. His intent in that regard would control.

As we have seen, the defendant-corporation's charter gave it the right "to receive and hold all kinds of property and dispose of the same at pleasure." It was not lacking in capacity to receive and accept bequests. Therein its position differed largely from the old association which preceded it. Originally, the trustees were almost an indispensable concomitant to the Association's operation. It was dependent upon them. The trustees held for it the necessary strength and sustenance for survival. But when the embryonic organism took on full corporate existence, it acquired capacities of its own. Thus, there was no reason why it should not be named a legatee by a testratrix wishing to do so. We think that the findings disclose that this was just what Mabel S. Barkyoumb did in her will. Neither the findings nor the will underlying them permit any other conclusion. The legatee named in the will is the defendant-corporation. It is named by its correct name. Not only has the chancellor found this, but the provision in the will creating the legacy is found as a fact It bears out the chancellor's finding. Moreover, the chancellor has made the further finding, "That plaintiff-trustees are not named, designated or mentioned, either as a group or by individual names in any part of the Last Will of Mable S. Barkyoumb, deceased." We search in vain for language in the will, which in the light of all the circumstances, discloses an intent to create a trust. Without such an intent there can be no trust. *O'Brien* v. *Holden*, 104 Vt 338, 346, 160 A 192; *Smith* v. *Deshaw*, 116 Vt 441, 448, 78 A2d 479; 89 CJS, Trusts §43.

Apparently the plaintiff-trustees are seeking to supply the intent missing in the will by substituting what they claim was the intent of Chauncey Warner when he made the original trust indenture which was accepted by the trustees. It will be recalled that the indenture recited that certain named persons

were appointed to act as trustees and to hold and manage "all funds, money and property that may be donated." No doubt when Mr. Warner led off in this laudable undertaking it was hoped that others, moved by his good example, would turn over further contributions to the trustees. So it was that the indenture went on to say that when the association had become a corporation, not only the Warner property should enure to the benefit of the new corporation but also any other amounts which the trustees may have received. No doubt this would hold, too, for all funds which donors might desire to put in the hands of the trustees in connection with the trust even after the corporation had come in existence. By so doing, the contributors would make it manifest that it was their intention that their contributions were to be subjected to the purposes, management and control of the trust. But to say that the trustees are entitled to manage and control, in their trust capacity, funds not willed to them,—funds as to which the donors have evidenced no intent that they should be so held, is to invade the rights of individual donors. It was the intent of Mabel S. Barkyoumb which was controlling here and not that of Chauncey Warner—if we assume that the two were in opposition. It is at this point that the court below went awry. The decree of the chancellor results in placing in trust property which was not left that way. No intent on the part of the testatrix to create a trust has been found. Without such an intent the decree stands unsupported in a vital respect and is vulnerable. The defendant-corporation's exception to it is well taken.

*Decree reversed and cause remanded. Let the injunction against the executor be dissolved and a new decree entered in accordance with this opinion.*